## The Buffalo & St. Mary's Railroad Company *v.* The Philadelphia & Erie Railroad Company; and The Pennsylvania Railroad Company, Lessee of the Philadelphia & Erie Railroad, Appellants.

*Railroads—Crossing of one railroad by another—Equity.*

On a bill in equity filed by one railroad company against another to secure a crossing, it appeared that the plaintiff proposed to cross by means of a bridge with sufficient span and headway to cause no interference with the defendants' tracks. The plaintiff's chief engineer testified that at the point selected for crossing the least injury would be done to the defendants' property ; and the defendants' chief engineer testified that the point selected was as good as any that could be found in that vicinity, and that a bridge with a clear span of sixty feet and a height of twenty-two feet would not be an obstruction, and would give sufficient room for four tracks. This was the only testimony on the subject. The court decreed that the crossing be made by a bridge constructed on a plan suggested by the chief engineer of the defendants. *Held*, that the decree was proper.

*Equity—Equity practice—Equity rules—Notice.*

The mere fact that the words " and answer" are omitted from the notice indorsed on a typewritten bill in equity, is not ground for dismissing the bill, where it appears that the notice otherwise complied with the new equity rules in form and substance; that the omission was inadvertently made; that it was harmless in effect, and that before hearing it was corrected in the printed copy of the bill served.

Argued Feb. 5, 1896. Appeal, No. 28, Jan. T., 1896, by defendants, from decree of C. P. Elk Co., Sept. T., 1895, No. 1, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Bill in equity for an overhead crossing.

From the record it appeared that on August 29, 1895, the defendants' solicitors, reserving all manner of benefit or advantage of exception to the sufficiency of plaintiff's bill in this cause, and of the notice to defendants to appear and answer therein, and to the service, manner and return of service, and of all other matters and things contained and embraced therein, appeared de bene esse, and moved the court to dissolve the preliminary injunction issued in this case, and to dismiss plaintiff's bill of complaint with costs, to be paid by said plaintiff, and assigned the following reasons :

1. Because no printed copy of the bill filed in this case was filed and served within twenty days after filing of the same, as required by Rule 14 of the rules of equity practice.

2. Because the notice to the defendants to cause appearances and answers to be entered and made for them in said court, on said bill indorsed, is not in accordance with the amended rules adopted by the Supreme Court of Pennsylvania, January 15, 1894, to regulate the several courts of common pleas of this commonwealth in proceedings in equity and in force when this bill was filed, inasmuch as it does not require and notify the defendants, as provided by said rule, as follows, viz : " You are also notified that if you fail to enter your appearance and file your answer within fifteen days you will be liable to have the bill taken pro confesso, and a decree made against you in your absence," and is otherwise not in form and substance as required by said rules.

On the same day the court entered the following order : " It

appearing to the court that the printed bill served on the defendants contained the new equity rule in regard to entering an appearance and answer, although there is a clerical omission in the bill filed of the words 'and answer,' the rule is refused." [2]

The material facts of the case appear by the opinion of the court below and of the Supreme Court. MAYER, P. J., filed the following opinion:

The plaintiff is a railroad corporation created and organized under the act of April 4, 1868, and its supplements, and is authorized to construct, maintain, and operate a railroad from a point on the St. Mary's & Southwestern Railroad, at or near St. Mary's, Elk county, Pennsylvania, to a point on the New York, Lake Erie & Western Coal & Railroad Company's Railroad, at or near Ketner station, in Elk county, and also to a point on the Western New York & Pennsylvania Railroad, at or near Clermont, McKean county, Pennsylvania.

The defendant, the Philadelphia & Erie Railroad Company, is a railroad corporation owning a line of railroad extending from Erie to Sunbury, which is being operated by its lessee, the Pennsylvania Railroad Company.

In the construction of its road it became necessary, in order to reach the eastern terminus of plaintiff's road, for the plaintiff company to cross the right of way and tracks of the Philadelphia & Erie Railroad Company at a place called the Summit, one mile east of the borough of St. Mary's, at which point the Philadelphia & Erie Railroad runs through a cut and has two tracks laid therein. The plaintiff has filed its bill in which it avers:

"That in order to build the railroad of the plaintiff company between its terminal points it is necessary to cross the property and tracks of the said Philadelphia & Erie Railroad Company, and the said plaintiff company has located, surveyed, and marked upon the ground a permanent location for its proposed line of railroad, which said permanent location crosses the tracks and property of the said Philadelphia & Erie Railroad Company, and was adopted at a meeting of the board of directors of the said plaintiff company held on the 6th day of June, A. D. 1895, and entered upon the minutes of the said meeting.

"That the said permanent location of the line of the plaintiff

company, so adopted as aforesaid, crosses the tracks of the Philadelphia & Erie Railroad Company at a point known as the 'Summit Cut,' in the township of Benzinger, county of Elk, and state of Pennsylvania, about two and one half miles east of the Philadelphia & Erie Railroad station at St. Mary's, by an overhead crossing at a deep cut, across which it is proposed to erect a steel girder bridge, having a clear span of ninety feet, the lowest portion of which will be twenty-one feet above the top of the rails on the tracks of the said Philadelphia & Erie Railroad Company.

" That the said Philadelphia & Erie Railroad Company claims the ownership of a tract of land at the point of crossing, containing about twenty-five acres; bounded on the north and east by lands of John Wilhelm, on the west by lands of Martin Fritz, and on the north by lands of Paul Bush and George Nissel; that said land is not occupied by the said defendant companies for railroad purposes, or used by them for any other purposes, except as it is crossed by them by two tracks running parallel with each other, and which are a part of the main line of the said Philadelphia & Erie Railroad Company, as shown by the map attached hereto ; that the grade of said tracks is far below the surface of the said land, and said land is not suitable for use by the said defendant companies for yards, switches, sidings, or any other purpose connected with the operation of their said railroad; that said land was not acquired by the said Philadelphia & Erie Railroad Company by virtue of their right of eminent domain, but was acquired by purchase ; that the appropriation of so much thereof as is necessary for the building of the tracks of the plaintiff company is absolutely necessary to enable it to construct its said railroad between the terminal points defined in its charter, and that this necessity is so absolute that without it the purposes of the incorporation of the plaintiff company will be defeated, and that this necessity arises from the nature and topography of the country, over which, it is unnecessary to say, the plaintiff company has no control.

" That the plaintiff company have located their said lines across the lands and tracks of the Philadelphia & Erie Railroad Company as aforesaid, and have appropriated a right of way across the same for the public purposes of its incorporation, to wit, for the necessary building and operation of the main line of its said railroad, in accordance with the terms of its charter.

" That the said right of way of the said plaintiff company, so located as aforesaid, is sixty feet in width, and crosses the lands of the said Philadelphia & Erie Railroad Company a distance of five hundred and thirteen feet, more or less, and contains about seventy-one one hundredths acres; that said plaintiff company, on the 24th day of June, A. D. 1895, submitted to the said defendant companies a map of the said right of way so adopted as aforesaid, and also a map and plan for the proposed crossing and bridge over the tracks of said defendant companies, copies of which said maps and plans are hereto annexed and herein referred to and made a part of this petition, and proposed to agree with the said defendant companies as to the amount of damages payable to them for the appropriation of the said easement as aforesaid, and also as to the manner of crossing their said tracks; but that the said defendant companies refused and still refuse to make any agreement as to the amount of said damages or the manner of the said crossing.

" That the said plaintiff company, J. K. P. Hall and J. A. Hanhauser, as sureties, thereupon made and executed their bond in the sum of $10,000 in favor of said defendant companies, conditioned upon the payment to said defendant companies, their certain attorney, successors, or assigns, of all such damages as the defendant companies shall be entitled to receive after the said amount shall have been agreed upon, or assessed in the manner provided by law, for or on account of the appropriation of the said easement by the said plaintiff company, and the said plaintiff company tendered the said bond to the said defendant companies, who refused to accept the same, whereupon the said plaintiff company, on the 25th day of July, A. D. 1895, served notice upon the said defendant companies that they would offer the said bond to Hon. John R. Kime, one of the judges of the court of common pleas of Elk county, having jurisdiction in respect of the approval of the same for filing and approval, at 10 o'clock A. M., on the 5th day of August, A. D. 1895, at the courthouse in Ridgway, Pa.

" That after the location and adoption of the line of the said railroad and right of way as aforesaid, and after the same had been marked upon the ground and the said defendant companies had received notice thereof, the said defendant companies, by their agents, servants, and employees, entered upon

the said location with a large force of men and are now in possession of the same, as your orator verily believes, with the intention of digging up, damaging, destroying, and obstructing the said location of the said plaintiff company, and for the purpose of interfering with said plaintiff company, its servants, agents, and employees, in the construction and operation of its said railroad across the lands and tracks of the said defendant companies."    And praying:

" That an injunction shall issue against the said defendant companies, preliminary until hearing and perpetual thereafter, enjoining and restraining the said defendant companies from digging up, damaging, destroying, obstructing, or in any other way interfering with the location so as aforesaid made by the plaintiff company.

" That the said defendant companies be enjoined and restrained from interfering with the plaintiff company, its servants, agents, and employees, in the construction and operation of its railroad across the lands and tracks of the said defendant companies upon the location aforesaid.

" That the plaintiff company shall be allowed to construct and operate its railroad as aforesaid upon the location aforesaid across the tracks and adjoining lands of the defendant companies according to the maps and plans herewith submitted, and under such further regulations and restrictions as may be imposed by your honorable court."

The defendants have filed their answer, in which they aver:

" That we have been informed by the plaintiff substantially of the facts set forth in the fourth paragraph of their bill, and have no other knowledge thereof, except that we have been informed by our lessee that certain persons claiming to act for the plaintiff company entered upon our property and trespassed thereupon by digging up the soil and filling up depressions on the land, claiming to be making a railroad for the plaintiff; this being done before any bond to secure damages had been filed in the court of common pleas of Elk county, and before this bill in equity had been filed in their behalf, and before any decree had been asked or made in reference to the place or manner of crossing our right of way and tracks.    The bridge which they allege in this fourth paragraph they propose to erect across the tracks of our railroad is not such a bridge as is re-

quired and will be necessary under the circumstances, if any crossing is allowed at this point as prayed for by the plaintiff. It should be at least twenty-two feet above the top of the rails on the tracks of our road, and a definite plan should be made for the abutments, about which nothing is said in the plaintiff's bill, fixing them at such a depth as will render it certain that they will not be undermined or disturbed in future necessary operation in widening our tracks."

Since the filing of the bill the plaintiffs have filed a bond in the court of common pleas of Elk county in the sum of $10,000, with sureties approved by one of the judges of said court, which will be ample security for all damages that may be caused to the property of the defendants by the entry upon and occupancy of the land of defendants and the crossing of its right of way and tracks.

The right of a railroad company to corporate rights being established, the right to cross, if necessary or convenient in reaching its terminus, is absolute, and the court can only ascertain the mode. This right is conferred by the first section of article XVII. of the constitution of 1874, which provides that " every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad." This provision of the constitution does not profess to declare how the crossing shall be made, but it was left to legislative action and judicial supervision to determine the mode of crossing. To this end the act of June 19, 1871, was passed, and gives authority to courts of equity to inquire into any alleged injurious act done by a corporation under a claim of right to the private rights of individuals, or to the rights or franchises of other corporations; and if such acts are found to have been committed without right, to restrain them. The second section of the same act declares : " When such legal proceedings relate to crossings of lines of railroads by other railroads, it shall be the duty of courts of equity of this commonwealth to ascertain and define by their decree the mode of such crossing which will inflict the least practical injury upon the rights of the company owning the road which is intended to be crossed; and if, in the judgment of such court, it is reasonably practicable to avoid a grade crossing, they shall, by their process, prevent a crossing at grade."

The principle is well settled that the lands or right of way occupied by one railroad company for its corporate purposes may be taken as right of way by another railroad company for crossing purposes : Pennsylvania Railroad Company's Appeal, 93 Pa. 150 ; Cake v. P. & E. Railroad Co., 87 Pa. 307 ; Pittsburg Junction Railroad Co.'s Appeal, 122 Pa. 529.

The testimony of B. E. Wellendorf, chief engineer of the plaintiff company, taken at the hearing on the part of plaintiff, establishes that in the location of the Buffalo & St. Mary's Railroad it is necessary to cross the Philadelphia & Erie Railroad at the Summit, and that the least practical injury would be done to the rights of the Philadelphia & Erie Railroad by crossing at that point. And Mr. Roberts, a witness on the part of plaintiff, gives it as his opinion that a steel or iron bridge with a clear .span of sixty feet, placed upon stone abutments built upon foundations three and a half feet below the top of the rail of the tracks of the Philadelphia & Erie Railroad, and having a height of twenty-two feet, would give sufficient clearance so as not to be an obstruction, and this would accommodate four tracks of the Philadelphia & Erie Railroad. No opposing evidence was adduced by the defendants.

[We are of the opinion that if the plaintiff company will erect a bridge in conformity with the opinion of Mr. Roberts that no practical injury can be inflicted, as it will be entirely outside of the right of way of the Philadelphia & Erie Railroad Company, and if any damages are done to the twenty-five acre lot by reason of the occupancy of any part of it by the plaintiff in the construction of its road, the bond already filed will be abundant security, and the damages can be assessed under the act of assembly.] [8]

[It is therefore ordered, adjudged, and decreed that the plaintiff company shall be allowed to construct its railroad upon the location adopted by it, as indicated by the map contained in their bill filed, across the roadway and adjoining lands of the defendant companies ; that said crossing shall be made over the tracks of said companies by means of a steel-girder bridge having a clear span of sixty feet and a clearance of at least twenty-two feet between the top of the rails of the tracks of said defendant companies and the girder of said bridge, which said bridge shall be of sufficient strength, and shall be

placed on stone abutments having a foundation at least three and one half feet below the top of the rail of the tracks of the Philadelphia & Erie Railroad. This order, however, shall not prevent the defendants from recovering any damages to which they may be legally entitled by reason of the crossing of their said lands by said plaintiff company, in such manner as may be provided by law for the ascertainment and recovery thereof. And an injunction is awarded restraining the said defendant companies from interfering with said plaintiff company, its servants, agents, or employees in the construction and operation of its railroad across the roadway and adjoining lands of said defendant companies on the location aforesaid and in the manner prescribed by this decree. Bond to be given in the sum of $10,000, with sureties approved by one of the judges of the court, before said injunction shall issue.] [9]

*Errors assigned* were (2) order refusing to dissolve the preliminary injunction and to dismiss bill on account of defect in notice; (8) portion of opinion as above, quoting it; (9) decree of the court as above, quoting it.

*C. H. M' Cauley, J. C. Johnson* with him, for appellants.—The defect in the notice was fatal to the bill: Cassidy v. Knapp, 167 Pa. 305.

The decree was improperly entered: Appeal of the New Brighton & New Castle R. R., 105 Pa. 13; Act of July 22, 1864, P. L. 1865; Pittsburg Junct. R. R. Co.'s App., 122 Pa. 511; Penna. R. R. Co.'s App., 93 Pa. 150; Sharon Ry. Co.'s App., 122 Pa. 533; P. W. & B. R. R. v. Williams, 54 Pa. 103.

*Harry Alvan Hall*, for appellee, cited: Pittsburg Junct. R. R. Co.'s App., 122 Pa. 511.

OPINION BY Mr. JUSTICE FELL, March 9, 1896 :

The bill filed in this case was to prevent interference by the defendants with the location, construction and operation of the plaintiff's railroad at a point where it was necessary to cross the land and tracks of the defendants' railroad. The necessity for the crossing was made manifest. The right to cross is conferred by the constitution, and the reasonable limits within which it

may be exercised are clearly defined by numerous decisions. The only question before the court related to the place and manner of crossing. A grade crossing was not desired. The plaintiff proposed to cross by means of a bridge with sufficient span and headway to cause no interference with the defendants' tracks. The plaintiff's chief engineer testified that at the point selected for crossing the least injury would be done to the defendants' property; and the defendants' chief engineer testified that the point selected was as good as any that could be found in that vicinity, and that a bridge with a clear span of sixty feet and a height of twenty-two feet would not be an obstruction and would give sufficient room for four tracks. This was the only testimony upon the subject. The crossing was directed to be made by a bridge constructed on a plan suggested by the chief engineer of the defendants. The decree entered by the learned judge was clearly right.

A type-written bill was filed with a certificate by counsel that there had not been sufficient time to print the bill, and that the purposes thereof were urgent and required immediate action. In the notice indorsed on the bill the defendants were required to appear within fifteen days, but there was an omission to require them to answer. The notice indorsed on the printed bill, which was served on the defendants within twenty days, was in exact compliance with the new equity rules, and the court upon hearing found that the omission of the words "and answer" from the notice on the type-written bill filed was a clerical omission, and refused to dismiss the bill as not in conformity with the equity rules. In Cassidy v. Knapp, 167 Pa. 305, the equity rules were disregarded both as to form of notice and manner of hearing. The case had proceeded from the beginning notwithstanding objections urged upon that ground. No attempt was made to correct the error in the form of notice, and the hearing of the motion for an injunction was under the old rules. The amended rules had been recently adopted, and their effect was not fully understood. It was our purpose in the opinion in that case to call attention to the fact that all equity proceedings were to be governed by these rules.

In this case there was a manifest intention to comply with the rule as to notice. The notice was regular in form and substance except in the clerical omission of two words, by which

the defendants were relieved of the necessity of filing an answer. The error was in a preliminary matter in a proceeding which has now passed to final hearing and decree. It was inadvertently made, it was harmless in effect, and it was corrected before hearing in the printed copy of the bill served. It is not our intention to relax the rule as stated in Cassidy v. Knapp, supra, but what was said in that case does not apply to a harmless mistake, innocently made and speedily corrected. The ruling of the learned judge of the common pleas was in harmony with the opinion of the present Chief Justice in Brinton v. Hogue, 172 Pa. 366.

As the original entry by the plaintiff on the property of the defendants was without authority, no bond having been filed, the affirmance of the decree should be without costs. The decree of the court of common pleas of September 9, 1895, is affirmed without costs, and it is ordered that the record costs be paid by the appellee.